The Honorable James Norton State Representative 3132 Bolin Hill Road Harrison, AR 72601-9586
Dear Representative Norton:
You have requested my opinion on the following questions concerning teacher salaries:
 1. Is it lawful for a public school district's board of education to adopt two salary schedules, to wit: one salary schedule applicable to certified staff members who now must work a minimum of 190 days as per Act 74 of the Second Extraordinary Session of 2003 and a second salary schedule — different from the latter one — for certified staff members who work more than 190 days and whose salaries are calculated by multiplying their individually assigned" weighted" factors times their placements on this second salary schedule?
 2. Does the changing of a certified staff member's "weighted" factor — used to calculate his/her salary — after May 1 of the contract year constitute a change of a "term" of his/her contract?
 3. If the answer to Question #2 is "yes," must a board of education obtain a certified staff member's permission to change his/her "weighted" factor for the new school year if the decision to do so is not made by May 1 of a contract year?
RESPONSE
The answer to your first question is "no," in my opinion. A public school district must file one salary schedule with the State Board of Education. This is not to suggest what that schedule must be, however, apart from the state-prescribed minimum requirements. State law does not require or otherwise address the use of "weighted factors" in calculating certified school employees' salaries. The answer to your second and third questions is unclear under the statutes. Conflicting evidence of legislative intent prevents a definitive answer, in the absence of a judicial ruling.
Question 1 — Is it lawful for a public school district's board ofeducation to adopt two salary schedules, to wit: one salary scheduleapplicable to certified staff members who now must work a minimum of 190days as per Act 74 of the Second Extraordinary Session of 2003 and asecond salary schedule — different from the latter one — for certifiedstaff members who work more than 190 days and whose salaries arecalculated by multiplying their individually assigned "weighted" factorstimes their placements on this second salary schedule?
It is my opinion that a public school district must file one salary schedule with the State Board of Education pursuant to Act 59 of the Second Extraordinary Session of 2003. This act amended Arkansas Code Title 6, Chapter 20, to add a new subchapter (A.C.A. §§ 6-20-2001—2006) entitled "Public School Funding Act of 2003." Relevant to your inquiry is newly enacted A.C.A. § 6-20-2005, which sets forth the requirements that school districts must meet in order to be entitled to state funds under subchapter 20. Subsection (f) of § 6-20-2005 states in relevant part:
 In order for a school district to be entitled to state funds under the provisions of this subchapter, each school district shall satisfy the following requirements:
 (4) (A) Each year the school district shall file with the state board a salary schedule for its certified employees that recognizes a minimum level of training and experience.
 (B) The schedule shall reflect the actual pay practices of the school district, including fringe benefits.
 (C) Salary increments for experience or education, or both, shall be identified on the schedule[.]
Acts 2003 (2nd Ex. Sess.), No. 59, Sec. 1.
This provision is virtually identical to former A.C.A. § 6-20-319 (4), upon which one of my predecessors relied in concluding "applicable law . . . requires each school district to maintain one, and only one, salary schedule for certified personnel." Op. Att'y Gen. 95-153. See also Op. Att'y Gen. 91-054 (stating that "there should be one schedule which, through the salary provisions, recognizes a minimum level of training and experience for all certified employees."). Act 59 repealed § 6-20-319.See Acts 2003 (2nd Ex. Sess.), No. 59, Sec. 4. It appears that the law remains unchanged in this regard, however, by virtue of the new § 6-20-2005, supra.
The requirement of one salary schedule is further reflected in the following provisions pertaining to school districts' personnel policies and certified staff salaries:
 Each school district in the state shall have a set of written personnel policies, including the teacher salary schedule.
A.C.A. § 6-17-201 (a) (Supp. 2003) (emphasis added).
 A school district shall adopt, in accordance with this subchapter, a supplement to the salary schedule for those certified staff employed longer than the period covered by the salary schedule and for duties in addition to certified employees regular teaching assignments.
* * *
 No certified person may waive payment according to the salary schedule.
A.C.A § 6-17-204 (b) (2) and (4) (Supp. 2003) (emphasis added).
 In school year 2004-2005, each school district in the state shall have in place a salary schedule with at least the following minimum levels of compensation for a basic contract[. . . .]
A.C.A. § 6-17-2403 (b) (emphasis added).[1]
I believe it is clear from the above provisions that each district is required to have one teacher salary schedule that reflects the district's "actual pay practices." A.C.A. § 6-20-2005 (4) (B), supra. It should perhaps also be noted, however, that school districts exercise considerable discretion in determining their pay practices, including the amount of salary increments beyond the required minimums, as well as the method or formula for calculating the salaries of those who are paid under a supplemental salary schedule.[2] In this regard, you have referred to the use of "weighted factors" to calculate the salaries of certified employees who work more than the 190-day "basic contract" period. I must note that state law does not require or otherwise address the "weighting" of a salary schedule, although this likely falls within the district's general discretion in connection with its pay practices.[3]
Question 2 — Does the changing of a certified staff member's "weighted"factor — used to calculate his/her salary — after May 1 of the contractyear constitute a change of a "term" of his/her contract?
Although you have not specifically mentioned the Teacher Fair Dismissal Act ("TFDA[1]"), your question presumably has reference to that act's requirement that every contract between a teacher and a school district "shall be renewed in writing on the same terms and for the same salary, unless increased or decreased by law, for the next school year succeeding the date of termination fixed therein . . . unless by May 1 of the contract year, the teacher is notified by the school superintendent that the superintendent is recommending that the teacher's contract not be renewed[.]" A.C.A. § 6-17-1506(a)(1) (Repl. 1999).[4] According to this provision, contracts are automatically renewed on May 1 if the requisite notice of nonrenewal is not given. See, e.g., Hilton v. Pine Bluff PublicSchools, 295 Ark. 397, 748 S.W.2d 648 (1988); Marion Co. Rur. Sch. Dist.1 v. Rastle, 265 Ark. 33, 576 S.W.2d 502 (1979). The potential significance of the May 1 date in relation to a change in a "weighted factor" is thus revealed — if a "weighted factor" is a "term" of the certified staff member's contract within the meaning of §6-17-1506(a)(1), the weighted factor cannot be changed after May 1 unless the requisite nonrenewal notice was provided (or a new, superseding contract was entered prior to May 1 — see § 6-17-1506(a)(3)).
This issue concerning a weighted factor as a contract term under A.C.A. § 6-17-1506 implicates the body of law governing school districts' personnel policies, which are codified at A.C.A. § 6-17-201 et seq.
(Repl. 1999 and Supp. 2003). Changing a "weighted factor" necessarily implicates personnel policy because all pay practices of the district must be reflected in the salary schedule. See A.C.A. § 6-20-2005(f)(4)(B), supra. And the salary schedule is a part of the district's personnel policies. See A.C.A. § 6-17-201 (a) (Supp. 2003) ("Each school district . . . shall have a set of written personnel policies, including the teacher salary schedule." (Emphasis added)). Additionally, and most significant for purposes of your question, the salary schedule, as a personnel policy, "shall be considered to be incorporated as terms of the certified personnel contracts. . . ." A.C.A. § 6-17-204(a). See also generally Helena School Dist. #2 v.Randall, 32 Ark. App. 50, 796 S.W.2d 586 (1990).
The answer to your question regarding a change in a weighted factor after May 1 of the contract year turns on the proper interpretation of A.C.A. §§ 6-17-1506 and 6-17-204, supra. If the salary schedule, which includes the weighted factor, is incorporated as a term of the certified staff member's contract, it would seem to follow that a change in the weighted factor will trigger TFDA, i.e., unless notice is given by May 1, the existing contract (including the weighted factor), will be automatically renewed. The automatic renewal entitles the teachers to a contract for the same salary and for the same terms as the previous contract. And one of the terms of the renewed contract, under this interpretation, is the teacher salary schedule that was effective at the time of that contract. On the other hand, because the salary schedule is a personnel policy, it may be amended, effective the following July 1, pursuant to A.C.A. §6-17-204 (Supp. 2003) (providing that changes or additions to personnel policies or new policies shall be made in accordance with A.C.A. §6-17-201 et seq. and that "[a]ny changes or additions to the personnel policies shall not be considered a part of certified personnel contracts until the next fiscal year." A.C.A. 6-17-204(b)(1) and (3)). This would lead one to believe that a change in a weighted factor could be effective for the next school year, even if the contracts were renewed automatically by virtue of the May 1 deadline in A.C.A. § 6-17-1506, and even if the personnel policies in effect on May 1, including the old salary schedule, were incorporated as terms of the contract as of that date.
The "mutually exclusive" operation and effective of the May 1 and July 1 dates was noted by one of my predecessors, who summarized the problem as follows:
 The problem arises because there are `terms' of the contract, including, presumably, the teacher salary schedule, which are locked in on automatic renewal. A.C.A. § 6-17-1506. On the other hand there are `personnel policies.' which were, in the same legislative session, made `terms' of the contract and which are subject to amendment. A.C.A. § 6-17-204. These concepts thus overlap. . . . A reading of these statutes thus reveals conflicting evidences of legislative intent. The statutes cannot be reconciled or employed simultaneously without reaching an outcome that in either case seems contrary in some aspect to other evidences of legislative intent.
Op. Att'y Gen. 92-097.
This opinion concluded by suggesting the need for legislative clarification or resort to the courts for a resolution of the issue. According to my review, the matter has not been clarified, either by the legislature or through the courts. These circumstances prevent me from opining further on the issue, as there is little that can be added to assist in resolving the conflict in the statutes.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] Section 6-17-2403 was enacted under Act 59 of the 2003 2nd Ex. Sess. as part of the "Teacher Compensation Program of 2003," and then amended by Act 74 of the same session. See Acts 2003 (2nd Ex. Sess.), Nos. 59, Sec. 2 and 74, Sec. 2.
A "basic contract" is defined under the Teacher Compensation Program as "a teacher employment contract for one hundred and ninety (190) days that includes ten (10) days of professional development." See A.C.A. §6-17-2402 (1) (as enacted under Acts 59 and 74 of the 2003 2nd Ex. Sess.).
[2] As indicated above, state law requires that the salary schedule recognize a minimum level of training and experience and that it identify salary increments. See A.C.A. § 6-20-2005(f)(4)(A), supra. Minimum
compensation levels for a "basic contract" are also prescribed. See
A.C.A. § 6-17-2403 (b) (Act 74 of the 2nd Ex. Sess. of 2003) and n. 1,supra (definition of "basic contract"). Additionally, a "supplement to the salary schedule" must be adopted for those who work longer than the period covered by the salary schedule and/or for those who have additional duties. See A.C.A. § 6-17-204(b)(2), supra. How a district determines particular salary levels or increments or supplemental salaries is, however, left largely to the district.
[3] Although state law is silent regarding the use of such factors, it is my understanding that this typically involves applying a multiplier to the salary schedule to calculate the salary of a certified employee who has additional duties or whose contract provides for a term longer than that of other staff. See, e.g., Ops. Att'y Gen. 96-153 and 92-213 (agreeing that a salary schedule may be "weighted" so that a teacher who bears additional responsibilities will be paid more). Cf. Bond v. LavacaSchool District, 347 Ark. 300, 64 S.W.3d 249 (2001) (involving a provision in a supplemental salary schedule that used a multiplier to calculate the daily rate of pay for a teacher whose contract included additional days in excess of the normal school year).
[4] A "teacher" under TFDA is "any person, exclusive of the superintendent or assistant superintendent, employed in an Arkansas public school district who is required to hold a teaching certificate from the Department of Education as a condition of employment." A.C.A. §6-17-1502(a)(1) (Repl. 1999).
[1] The Ark. Sup. Crt commonly uses TFDA when abbreviating the Teacher Fair Dismissal Act of 1983.